# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**RACHEL JUINO**                                                    **CIVIL ACTION**

**VERSUS**                                                            **No. 11-466**

**LIVINGSTON PARISH FIRE**                                    **SECTION "I"**
**DISTRICT NO. 5**

## ORDER AND REASONS

Before the Court is a motion[1] for partial[2] summary judgment[3] filed by defendant,

Livingston Parish Fire Protection District No. 5 ("District 5").  Plaintiff, Rachel Juino ("Juino"),

opposes[4] the motion.  For the following reasons, the motion is **GRANTED**.  Juino's claims with

respect to violations of Title VII of the Civil Rights Act of 1964 are **DISMISSED WITHOUT**

**PREJUDICE** pursuant to Rule 12(b)(1).  Because the Court declines to exercise supplemental

jurisdiction over Juino's state law claims, all remaining state law claims are **DISMISSED**

**WITHOUT PREJUDICE**.

## *BACKGROUND*

Juino became a volunteer firefighter with District 5 in November, 2009.[5]   Shortly

---

[1] R. Doc. No. 6.

[2] District 5 argues that Juino's Title VII and LEDL claims must be dismissed.  As stated *infra*, the Court does not reach any of Juino's state law claims.  Consequently, this order does not resolve whether Juino is entitled to any relief under the LEDL.  *See* pp. 17-18.  Likewise, the motion does not address Juino's remaining state law claims for violations of Louisiana's whistle blower statute and for assault, battery and intentional inflection of emotional distress.

[3] The Court has construed this motion as a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) for the reasons set forth *infra* on pp. 3-4.

[4] R. Doc. No. 9.

[5] R. Doc. No. 9-2, p. 1.

thereafter, Juino alleges that another male firefighter, John Sullivan ("Sullivan"), began to sexually harass her.[6] According to Juino, Sullivan would frequently call her cell phone and follow her around the fire department.[7] Sullivan allegedly bragged to other firefighters that he was "sleeping with" Juino.[8] Juino states that she began to fear for her personal safety after an incident where "Sullivan jerked [her] head from side to side and pulled [her] air pack valve off [her] face mask in a confrontation."[9] Juino reported the harassment to Captain Charles Weaver ("Weaver") and Fire Chief Elmer Knab ("Knab").[10] Neither Weaver nor Knab allegedly took any action to discipline Sullivan or to ensure that he stopped harassing Juino.[11] Juino asserts that Knab "told [her] that if [she] continued to complain about Sullivan's behavior [she] could 'drop [her] gear' and leave the department."[12] Due to Sullivan's continuing harassment, Juino states she left her position with District 5 on April 2, 2010.[13]

Juino filed a charge with the Equal Employment Opportunity Commission ("EEOC") and requested a right-to-sue letter. The EEOC failed to issue the letter within six months.[14]

---

[6] R. Doc. No. 9-2, pp. 1-2.
[7] R. Doc. No. 9-2, pp. 1-2.
[8] R. Doc. No. 9-2, p. 2.
[9] R. Doc. No. 9-2, p. 2.
[10] R. Doc. No. 9-2, p. 2.
[11] R. Doc. No. 9-2, pp. 1-2.
[12] R. Doc. No. 9-2, p. 2.
[13] R. Doc. No. 1, ¶ 21.

[14] R. Doc. No. 1., ¶ 29. Title 42, United States Code, Section 2000e-5(f)(1) provides that "within one hundred and eighty days from the filing of such charge . . ., the Commission . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge."

The U.S. Fifth Circuit Court of Appeals ("Fifth Circuit") has stated that receipt of an EEOC right-to-sue letter "is a condition precedent to a Title VII claim rather than a jurisdictional prerequisite," and that such condition precedent is subject to equitable modification. *Pinkard v. Pullman-Standard*, 678 F.2d 1211, 1218-19 (5th Cir. 1982). In *Barnes v. Levitt*, the Fifth Circuit observed that "[t]he 180-day provision essentially allows the claimant to appeal to the district court if there has not been final agency action on her claim after six months from filing the claim with the agency." *Barnes*, 118 F.3d 404, 409 (5th Cir. 1997) (citing *Munoz v. Aldridge*, 894 F.2d 1489, 1492 (5th Cir. 1990)). However, because the plaintiff in *Barnes* did not cooperate with the EEOC investigation, the Fifth Circuit held that the plaintiff could not pursue a lawsuit in federal court without a right-to-sue letter, underscoring

Consequently, Juino filed her complaint against District 5 for violations of Title VII of the Civil Rights Act of 1964 ("Title VII," 42 U.S.C. § 2000e, *et seq.*) due to sexual harassment and retaliation for reporting sexual harassment, violations of Louisiana Employment Discrimination law ("LEDL," La. Rev. Stat. § 23:301, *et seq.*), violations of Louisiana's whistle blower statute (La. Rev. Stat. § 23:967, *et seq.*), assault, battery, and intentional infliction of emotional distress.[15]

District 5 argues that Juino's Title VII claims must be dismissed because District 5 is not covered by Title VII as it does not have the requisite number of employees. Furthermore, District 5 argues, even if it were covered by Title VII, Juino was a volunteer firefighter. Consequently, Juino was not an "employee" of District 5 and she is not covered by Title VII.[16] District 5 likewise argues that Juino's LEDL claims must be dismissed because District 5 is not covered by the LEDL and, even if it were covered, District 5 was not Juino's employer.[17] Juino asserts that District 5 is covered by Title VII and the LEDL and that she is a covered employee protected from such discrimination under both state and federal law.[18]

District 5 does not argue that Juino's Title VII claims must be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Nevertheless, the Court notes that whether

---

that she could not "be dilatory at the administrative level, wait for the 180 days to pass, and then invoke the jurisdiction of the federal court." *Id.* at 410.

 Unlike in *Barnes*, Juino has cooperated with the EEOC. More than one year has elapsed since she filed her charge with the EEOC and more than six months have elapsed since she requested her right-to-sue letter. Given Juino's compliance and the fact that District 5 has not argued that this Court lacks authority to hear this case because the EEOC has not issued a right-to-sue letter, the Court finds that the above-captioned case is properly before the Court. *See, e.g.*, *Pietras v. Board of Fire Comm'rs of Farmingville Fire Dist.*, 180 F.3d 468, 474 (2d Cir. 1999) ("Given that [plaintiff] made a diligent effort to obtain a notice-of-right-to-sue letter from the EEOC and was denied one on the erroneous basis that she was not an employee [because she was a volunteer firefighter], we believe that the district court acted well within its discretion by excusing the absence of such a letter in this case.").

[15] R. Doc. No. 1, ¶¶ 24-27.
[16] R. Doc. No. 6-1, p. 2.
[17] R. Doc. No. 6-1, p. 3.
[18] R. Doc. No. 9.

District 5 is an "employer" subject to Title VII is a jurisdictional question.  *See Greenlees v. Eidenmuller Enters.*, 32 F.3d 197, 198 (5th Cir. 1994); *see also Guillory v. Rainbow Chrysler Dodge Jeep, LLC*, 158 Fed. App'x 536, 537 (5th Cir. 2005) (stating "the statutory minimum of fifteen employees is a jurisdictional requirement" and affirming dismissal pursuant to Rule 12(b)(1) where district court found that defendant did not satisfy the fifteen-employee threshold) (citing *Greenlees*, *supra*).[19]  "When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented."[20] *Gonzalez v. Thaler*, ___ U.S. ___, 132 S.Ct. 641, 648 (2012) (citing *United States v. Cotton*, 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002)).  Accordingly, if District 5 is not an "employer" for purposes of Title VII, then Juino's Title VII claims must be dismissed pursuant to Rule 12(b)(1).

Because the Court finds that Juino's federal claims under Title VII must be dismissed, the Court declines to exercise supplemental jurisdiction over her remaining state law claims.

## *LAW AND ANALYSIS*

### I.      Rule 12(b)(1)

A motion to dismiss filed pursuant to Rule 12(b)(1) "allow[s] a party to challenge the subject matter jurisdiction of the district court to hear a case."  *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001). The party asserting jurisdiction carries the burden of proof.  *Id.*  The district court may base its determination as to its subject matter jurisdiction on: "(1) the complaint alone;

---

[19] Whether a defendant is a Title VII "employer" is a jurisdictional question properly resolved pursuant to Rule 12(b)(1).  *Keller v. Niskayuna Consol. Fire Dist. 1*, 51 F. Supp.2d 223, 226 (N.D.N.Y. 1999).

[20] Because District 5's motion was presented as a motion for partial summary judgment wherein District 5 argued that it is not a covered employer for the purposes of Title VII, Juino has had sufficient notice that she must come forward with evidence to support her argument that District 5 should be subject to Title VII liability.  The Court has all the necessary facts before it to determine whether District 5 is a Title VII "employer."

(2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* If a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, a court should address the jurisdictional attack before reaching any other arguments that attack the merits of a plaintiff's claims. *Id.* "A court's dismissal of a case for lack of subject-matter jurisdiction is not a decision on the merits, and the dismissal does not necessarily prevent the plaintiff from pursuing the claim in another forum." *Advocacy Ctr. for the Elderly and Disabled v. La. Dep't of Health and Hosp.*, 731 F.Supp.2d 583, 588 (E.D. La. 2010) (Vance, J.) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)).

## II.     Title VII

Title VII prohibits discrimination "against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). "Sexual harassment is a form of discriminatory treatment, and applies in any situation where there is discrimination 'because of' sex, whether it be between members of the same or opposite sexes." *Cherry v. Shaw Coastal, Inc.*, ___ F.3d ___, 2012 WL 147867, at *3 (5th Cir. Jan. 19, 2012) (citing *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)). In order to be subject to liability pursuant to Title VII, an "employer" must have at least fifteen "employees" "for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." *See* 42 U.S.C. § 2000e(b).

The term "employee" is circularly defined as "an individual employed by an employer." *See* 42 U.S.C. § 2000e(f). A plaintiff must have an employer/employee relationship with the

defendant in order to pursue a Title VII employment discrimination claim. *Oden v. Oktibbeha Cnty., Miss.*, 246 F.3d 458, 465 (5th Cir. 2001). Consequently, to determine whether District 5 is an "employer" subject to liability for Juino's claims under Title VII, the Court must follow a two-step inquiry: (1) did District 5 have at least fifteen employees during the requisite time period? and, if so, (2) did an employment relationship exist between Juino and District 5? *See Muhammad v. Dallas Cnty. Cmty. Supervision and Corr.*, 479 F.3d 377, 380 (5th Cir. 2007).

District 5 provides fire protection services to certain areas of Livingston Parish, Louisiana. During 2009 and 2010, District 5 states that it employed only three "employees" and that its "primary source of manpower is volunteers."[21] The number of volunteer firefighters on District 5's roster fluctuates, but historically it has had roughly fifty volunteers at any one time.[22] District 5 argues that because it does not meet Title VII's fifteen-employee threshold, it may not be subject to liability. Likewise, because Juino is a volunteer firefighter and has no employer/employee relationship with District 5, she has no cause of action pursuant to Title VII.

Juino counters with a District 5 membership roster dated July 19, 2010, which lists eighty-three individuals.[23] Juino asserts that the roster provides evidence that District 5 employed more than the requisite fifteen-employee minimum and, as such, it is covered by Title VII because volunteer firefighters such as herself are Title VII "employees."[24] District 5 responds that it not is an "employer" because all persons listed on the roster, except for three actual employees, are volunteer firefighters like Juino. Volunteer firefighters, District 5 maintains, are not Title VII employees.

---

[21] R. Doc. No. 6-3, p. 1.
[22] R. Doc. No. 6-3, p. 1.
[23] R. Doc. No. 9-2, pp. 4-5.
[24] R. Doc. No. 9, p. 5.

Essentially, the two-step inquiry that the Fifth Circuit has set forth in cases such as *Muhammad*, *supra*, collapses when a court is faced with the factual scenario presented in this case. In order to determine at the first step whether District 5 employed at least fifteen Title VII employees, the Court must analyze whether employment relationships exist between District 5 and volunteer firefighters such as Juino. *See Holder v. Town of Bristol*, 2009 WL 3004552, at *2 (N.D. Ind. Sept. 17, 2009) ("In this case, the second issue necessarily turns on the outcome of the first because if [plaintiff, a reserve police officer,] and the other reserve officers are not employees, then [defendant] employs too few employees to be subject to Title VII liability."). Consequently, the Court will consider the two questions together because if volunteer firefighters – which make up the bulk of District 5's manpower – are not in employment relationships with District 5, then District 5 does not reach the fifteen-employee threshold and it cannot be subject to liability pursuant to Title VII.

District 5 urges the Court to adopt the *O'Connor* two-step analysis to resolve whether Juino is a covered employee. *See O'Connor v. Davis*, 126 F.3d 112, 115-16 (2nd Cir. 1997); *Llampallas v. Mini-Circuits Lab, Inc.*, 163 F.3d 1236, 1243 (11th Cir. 1998); *see also Haavistola v. Cmty. Fire Co. of Rising Sun, Inc.*, 6 F.3d 211 (4th Cir. 1993). District 5's proposed test would require the Court to determine, as a threshold matter, whether Juino has received remuneration in her work as a volunteer firefighter. *Id.* If Juino satisfies this requirement, the Court would then perform a common law agency analysis. *Id.* Other courts have considered remuneration as merely one, non-dispositive factor, of a common law agency analysis. *See, e.g., Bryson v. Middlefield Volunteer Fire Dep't*, 656 F.3d 348, 352-56 (6th Cir. 2011); *Fichman v. Media Center*, 512 F.3d 1157, 1160-61 (9th Cir. 2007) (analyzing agency principals to determine

whether a directors and independent volunteer producers of a non-profit organization are "employees" under the Age Discrimination in Employment Act, 42 U.S.C. § 12101, *et seq.*).[25] Juino underscores that some courts have held that whether or not a volunteer firefighter receives a salary is not a litmus test for determining whether such a person was an employee for the purposes of Title VII. *See, e.g.*, *Pietras v. Board of Fire Comm'rs of Farmingville Fire Dist.*, 180 F.3d 468 (2d Cir. 1999).

The Fifth Circuit has not addressed whether district courts should employ a two-step remuneration analysis versus a common law agency analysis. At least one district court in the Fifth Circuit has considered whether a plaintiff received actual financial benefits as a threshold matter. *See Moran v. Harris County*, 2007 WL 2534824, at *1-2 (S.D. Tex. Aug. 31, 2007) (concluding that a reserve deputy constable who received no "financial benefits" was not an employee because "[e]mployees expect to get paid"). Another district court in the Fifth Circuit has indicated that it would apply the hybrid economic realities/common law control test set forth in *Diggs v. Harris Hosp.-Methodist, Inc.*, 847 F.2d 270, 272 (5th Cir. 1988). *See Noah v. Community Place*, 2011 WL 237701, at *2 (S.D. Miss. Jan. 24, 2011) (noting *Diggs*, but ultimately declining to analyze the issue because the parties did not brief it). The Court agrees with District 5 that the *O'Connor* approach is likely the better inquiry in light of the facts of this case. However, given that the Fifth Circuit has provided no guidance on this issue, out of an abundance of caution, the Court will conduct both analyses.

---

[25] *See* n.33, *infra*.

## A.  Remuneration Test

In *O'Connor*, the plaintiff,  Bridget O'Connor ("O'Connor"), was a college student interning at Rockland Psychiatric Institute ("Rockland") when a staff physician sexually harassed her.  Rockland supervised the plaintiff's work, but paid her nothing.  O'Connor received federal work-study funds from her college for her work at Rockland.  O'Connor sued for sexual harassment under Title VII.  The U.S. Second Circuit Court of Appeals rejected O'Connor's argument that she was an employee under common law agency principles for the purposes of Title VII, and it held that O'Connor had to show that she was "hired" before such an agency analysis would be relevant:

> Both parties on appeal (and the district court below) addressed themselves to the question of whether or not O'Connor was an employee within this [common law agency] framework [as set forth in *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989)]. However, we think that this analysis is flawed because it ignores the antecedent question of whether O'Connor was hired by Rockland for any purpose. As the Supreme Court suggests, the common feature shared by both the employee and the independent contractor is that they are 'hired part[ies],' *id.*, and thus, a prerequisite to considering whether an individual is one or the other under common-law agency principles is that the individual have been hired in the first instance. That is, only where a 'hire' has occurred should the common-law agency analysis be undertaken.

*O'Connor*, 126 F.3d at 115.  Whether O'Connor received "direct or indirect economic remuneration" went to the heart of her status as a "hired" party.  *Id.*  Because O'Connor had not received any such compensation, the court found that "the preliminary question of remuneration is dispositive in this case" and it concluded that she was not an employee within the meaning of Title VII.  *Id.*

When a plaintiff like Juino has received "numerous job-related benefits" that do not include a traditional salary, the Second and Fourth Circuit Courts of Appeal consider whether these benefits constitute "indirect but significant remuneration" to be a factual question that must be resolved by the factfinder. *See Pietras v. Board of Fire Comm'rs of Farmingville Fire Dist.*, 180 F.3d 468, 473 (2d Cir. 1999) ("We conclude, in accord with *Haavistola*, that a non-salaried volunteer firefighter's employment status under Title VII is a fact question when that firefighter is entitled to significant benefits."); *Haavistola v. Cmty. Fire Co. of Rising Sun*, 6 F.3d 211, 222 (4th Cir. 1993) (holding that the factfinder must resolve the "ultimate conclusion whether the benefits represent indirect but significant remuneration as Haavistola contends or inconsequential incidents of an otherwise gratuitous relationship"). The parties here do not dispute what benefits Juino has received. Consequently, for the purposes of Rule 12(b)(1), the Court need only resolve the legal effect of such benefits.

District 5 did not pay Juino a salary, it does not pay social security taxes (or any other taxes) for the benefit of its volunteer firefighters, it does not provide retirement benefits, and it does not provide annual leave.[26] Most District 5 volunteer firefighters have full-time paying jobs.[27] As set forth in her affidavit, the indirect benefits that Juino received as a volunteer firefighter included: (1) two dollars for every emergency call to which she responded;[28] (2) a life insurance policy; (3) emergency training and first responder courses; and (4) a badge, uniform,

---

[26] R. Doc. No. 23-1, p. 1.

[27] R. Doc. No. 23-1, p. 2.

[28] Juino claims that she received this reimbursement. R. Doc. No. 9-2, p. 2. District 5 asserts that, because she was a probationary member of District 5, Juino did not receive this reimbursement during her time as a volunteer firefighter. R. Doc. No. 6-3, p. 2. The Court will assume that Juino did receive the two dollar reimbursement because, ultimately, whether she did or did not receive it does not affect the Court's analysis.

emergency gear, and dress uniform.[29]  The Court finds these indirect benefits to be insubstantial,

especially when compared with those that the plaintiffs received in *Pietras* and *Haavistola*.  *See*

*Pietras*, 180 F.3d at 471 (holding that the district court in a bench trial did not clearly err when

the judge found that a volunteer firefighter was an employee because he received a retirement

pension, life insurance, death benefits, disability insurance, and some medical benefits);

*Haavistola*,  6 F.3d at 211 (reversing entry of summary judgment and remanding for a trial where

volunteer firefighter was entitled to a state-funded disability pension, survivors' benefits for

dependents, benefits under the Federal Public Safety Officers' Benefits Act, group life insurance,

scholarships for survivors, professional certifications, tuition reimbursement, tax exemptions and

coverage under Maryland's Workers Compensation Act).

Rather, the Court finds that Juino's benefits are most analogous to those received in

*Holder v. Town of Bristol*, 2009 WL 3004552 (N.D. Ind. Sept. 17, 2009), where the district court

concluded that a reserve police officer was not a Title VII employee.  In *Bristol*, plaintiff, Joel

Holder ("Holder"), claimed that he was subjected to severe sexual harassment and a hostile work

environment while serving as a volunteer reserve police officer.  *Holder*, 2009 WL 3004552, at

*1.  As an officer, Holder was entitled to: "(1) free use of police equipment; (2) a uniform and

dry cleaning allowance; (3) worker's compensation insurance; (4) disability insurance; and (5)

state-funded life insurance for death in the duty."  *Id*. at *5.  With respect to these benefits, the

court observed:

> But all of these so-called benefits are incidental to Holder's volunteer
> duties and have no independent value.  For example, the police department pays
> for Holder's use of a police car, weapons, and protective gear. This is only
> sensible since the reserve officers need these items to perform their volunteer

---

[29] R. Doc. No. 9-2, p. 2.

duties. It's like giving someone who volunteers at a soup kitchen a ladle. If the volunteer officers are putting themselves in harm's way in order to ensure public safety, the least the Town can do is pay for their equipment. But Holder doesn't get to keep these items for personal use. And although the Town gives reserve officers money for a police uniform and dry cleaning, this too only serves the purpose of aiding them in their official duties. Holder can't just pocket the money and wear civilian clothes on duty.

> As for the line-of-duty benefits that Holder received – workers' compensation, disability insurance, and death benefits – these are not guaranteed forms of remuneration. Holder and his dependents would have only seen a dime if something bad happened to him while he was on duty. Holder was never injured in the line of duty. So he didn't receive any health insurance benefits or compensation for medical expenses. It's worth noting that these insurance benefits are just as much for the Town's protection as they are for the reserve officers. If Holder had injured himself and made a claim against the Town, the policies would cover the medical costs. So, without more, it can't be said that these mechanisms for insuring risk had independent value as consideration in exchange for labor.

*Id.* The court concluded that, "Holder's work for the Town of Bristol is more akin to community service than gainful employment." *Id.* at *6.

District 5 has afforded Juino even fewer benefits than those the Town of Bristol afforded to Holder. The two dollar per call reimbursement is intended to defray emergency response costs – fuel and wear and tear on personal vehicles, etc. – because District 5 asks volunteer firefighters to supply their own transportation.[30] This reimbursement, along with the emergency training and gear supplied to Juino, are similar to the "ladles" given to soup kitchen volunteers. *Id.* at *5. Likewise, the life insurance policy only has value if she suffers an unfortunate event. This is not the type of benefit, like general medical insurance, upon which an individual would be economically dependent. *See Keller v. Niskayuna Consol. Fire Dist. 1*, 51 F. Supp.2d 223, 232

---

[30] R. Doc. No. 6-2, p. 2.

(N.D.N.Y. 1999) ("If a financial benefit or a benefit with significant financial value (e.g. general medical insurance) is received in an ongoing, roughly contemporaneous fashion, then an individual might well depend upon it, supporting a finding that they are in an employment relationship. However, if the benefit [such as a small pension] is received only after many years of services, then any concurrent dependance [sic] is absent.").[31] The Court agrees that "[w]hen compared to the type of remuneration ordinarily derived from an employment relationship, the benefits received by [Juino] are simply too minor to rise to a level that can be characterized as compensation." *Scott v. City of Minco*, 393 F.Supp.2d 1180, 1190 (W.D. Ok. 2005).[32]

Because Juino has not received significant remuneration for her work as a District 5 firefighter, she does not satisfy the first step of the remuneration test. Utilizing such a test, Juino is not a Title VII employee and, accordingly, District 5 is not a Title VII employer.[33]

---

[31] In *Keller*, the only benefit to which the plaintiff, a volunteer firefighter, was entitled was the ability to participate in a "service award program" that awarded points for completing a certain number of tasks in a given year. If the plaintiff were able to satisfy the program's requirements, she would receive some financial benefit when she reached the age of 55. The *Keller* court found that this benefit was not sufficient remuneration for plaintiff to be considered a Title VII employee and, consequently, that the defendant did not employ fifteen employees as required by Title VII. *Keller*, 51 F.Supp.2d at 232.

[32] The plaintiff in *Minco* was also a volunteer firefighter who received a uniform allowance, certain tax credits and a pension through the Oklahoma State Firefighters Association. The *Minco* court likewise concluded that these benefits were too insubstantial for the plaintiff to be a Title VII employee and that the fire department was not a Title VII employer. *Minco*, 393 F.Supp.2d at 1190-91.

[33] *See also Evans v. Wilkinson*, 609 F.Supp.2d 489 (D.Md. 2009) (volunteer rescue squad E.M.T. who could participate in a service award program similar to that in *Keller*, could apply for a first-time homeowner's assistance program, and was eligible for a scholarship program was not a Title VII employee); *Moran v. Harris County*, 2007 WL 2534824 (S.D. Tex. Aug. 31, 2007) (reserve police constable who could "take [law enforcement] certification classes at no cost, make connections with local police officers, and get on-the-job experience filling in for actual deputy constables" was not a Title VII employee); *Tawes v. Frankford Volunteer Fire Co.*, 2005 WL 83784 (D.Del. Jan. 13, 2005) (volunteer firefighter who received secondary automobile insurance for using his personal vehicle to respond to emergency calls, insurance against death or injury while performing firefighter duties, discounts on wireless telephone contracts, and a small pension was not an "employee" for purposes of the Americans with Disabilities Act ("ADA," 42 U.S.C. 12101, *et seq.*)).

The Court notes that Title VII's definition of "employee" ("an individual employed by an employer," 42 U.S.C. § 2000e(f)) is identical to the ADA's definition of "employee" ("an individual employed by an employer," 42 U.S.C. § 12111(4)). Courts often look to the various federal employment discrimination acts when interpreting

## B. Hybrid Economic Realities/Common Law Control Test

The Court agrees with District 5 that the remuneration test better accommodates the factual scenario at issue in this case because it requires a determination, as a threshold matter, of whether a plaintiff is a "hired" party. Nevertheless, as stated, some courts look to agency principals to resolve whether Juino is a Title VII covered employee. *See, e.g.*, *Bryson v. Middlefield Volunteer Fire Dep't*, 656 F.3d 348, 352-56 (6th Cir. 2011).[34]

The Fifth Circuit utilizes the hybrid economic realities/common law control test set forth in *Diggs v. Harris Hosp.-Methodist, Inc.*, 847 F.2d 270 (5th Cir. 1988), to determine whether a plaintiff is a Title VII employee or an independent contractor.[35] *Diggs*, 847 F.2d at 272-73. First, the Court must "consider[] the economic realities of the work relationship." *Id.* at 272 (citing *Mares v. Marsh*, 777 F.2d 1066, 1067 (5th Cir. 1985)). This economic realities inquiry investigates whether purported "employees," "as a matter of economic reality, are dependent upon the business to which they render service." *Id.* at 272 n.3 (quoting *Mares*, 777 F.2d at 1067 (internal quotation marks omitted)). Second, the Court considers whether the "employer" has the right to control the "employee" by assessing several factors:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision;

---

common language. *See, e.g.*, *Flowers v. S. Reg'l Phyisican Servs. Inc.*, 247 F.3d 229, 233 (5th Cir. 2001) ("We conclude that the language of Title VII and the ADA dictates a consistent reading of the two statutes.").

[34] In *Bryson*, the Sixth Circuit rejected the remuneration test, stating "[w]e believe that the district court erred, however, in its conclusion that remuneration must be an independent antecedent inquiry," *Bryson*, 656 F.3d at 353. It held that "[a]lthough remuneration is a factor to be considered, it must be weighed with all other incidents of the relationship. *Id.* at 355.

[35] The fact that this test is used to distinguish between employees and independent contractors is why the remuneration test is the more appropriate analysis. As another district judge has observed when faced with similar facts, conducting a common law agency analysis is "like using a screwdriver when the job calls for a wrench. The question isn't so much whether [a plaintiff] is an independent contractor as opposed to an employee, but whether he is a volunteer or an employee." *Holder*, 2009 WL 3004552, at *3.

(2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer;" (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

*Id.* at 272-73 (quoting *Broussard v. L.H. Bossier, Inc.*, 789 F.2d 1158, 1160 (5th Cir. 1986)).

First, with respect to the "economic reality" of the relationship between Juino and District 5, it is clear that Juino was not dependent upon District 5 for her livelihood. Even assuming that Juino received the two dollar per call reimbursement, she responded to thirty-nine calls during her four months as a District 5 volunteer firefighter – for which she would have been reimbursed $78.00.[36] Likewise, Juino could not depend upon the other benefits District 5 provided – training; a badge, gear and uniforms; and an insurance policy – to support herself. Juino has not informed the Court whether she has another job, but most District 5 volunteer firefighters have other full-time employment with which they support themselves.[37]

Second, the balance of the "right to control" factors also do not weigh in Juino's favor. The Court recognizes that the first, second and eighth factors would support a finding that Juino and District 5 had an employment relationship. Because Juino was a "rookie" firefighter, she was closely supervised.[38] She also had to undergo training in order to be eligible to respond to

---

[36] R. Doc. No. 23-1, p. 2.

[37] R. Doc. No. 23-1, p. 2.

[38] However, Juino also had the right to determine the calls to which she would respond and the meetings that she would attend. District 5 did not schedule when she would respond to calls, did not dictate when she had to be present at the firehouse, and did not monitor how she spent her time there. R. Doc. No. 23-1, pp. 1-2.

emergency calls.[39]  Finally, firefighting is arguably an integral part of District 5's "business" of fighting fires.[40]

Nevertheless, District 5 did not supply all of her equipment.  While the defendant did give Juino a badge, equipment, etc., Juino had to expend her own resources in order to respond to emergency calls.[41]  Juino was a probationary volunteer who would not necessarily have been able to continue her volunteer service if she did not complete certain training responsibilities.[42]  As the Court discussed above, Juino received some indirect benefits, but she was not paid a salary, stipend or analogous compensation.[43]  District 5 did not provide paid annual leave or retirement benefits.[44]  District 5 did not pay social security taxes for Juino.[45]  In sum, taken as a whole, District 5 did not have the right to control Juino's service.  Because Juino does not satisfy the economic realities/common law control test, she is not a Title VII employee and, accordingly, District 5 is not a Title VII employer.

---

[39] R. Doc. No. 23-1, p. 3.

[40] Regarding the intention of the parties, District 5 and Juino, unsurprisingly, assert opposite opinions regarding their intentions.  The Court has no evidence (such as a written contract), other than their statements, from which to divine their intentions. Consequently, the Court draws no inferences from that factor.
　　　Furthermore, with respect to factor six, Juino claims she was constructively discharged whereas District 5 argues that she simply stopped her volunteer service without providing any notice.  The Court considers this factor to be neutral and draws no inferences from it in favor of either party.

[41] District 5 provided the two dollar reimbursement in order to defray response costs borne by volunteers.  R. Doc. No. 6-2, p. 2.

[42] R. Doc. No. 23-1, p. 3.

[43]　Juino argues that she was entitled to take a ninety day leave of absence if family circumstances, etc., so required. Juino would not receive any compensation or remuneration if she exercised her right to take this leave.  She asserts that this ability to take a leave of absence is analogous to "annual leave."  R. Doc. No. 25, p. 7.  Generally, "annual leave" is time that is provided as a form of compensation (vacation time, holidays, and the like).  Juino's ability to take a ninety day leave of absence constituted no such benefit.

[44] R. Doc. No. 23-1, p. 1.

[45] R. Doc. No. 23-1, p. 1.

### III.    Juino's Remaining State Law Claims

Having dismissed Juino's federal Title VII claims before trial, the Court next considers whether to exercise supplemental jurisdiction over Juino's remaining state law claims for violations of the LEDL, Louisiana's whistle blower statute, assault, battery, and intentional infliction of emotional distress.  *See Cudd Pressure Control Inc. v. Roles*, 328 Fed. App'x 961, 966 n.2 (5th Cir. 2009) ("[T]the district court should keep in mind the Supreme Court's instructions that 'if the federal claims are dismissed before trial, . . . the state claims should be dismissed [or remanded] as well.' ") (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). "When a court dismisses all federal claims before trial, the general rule is to dismiss any [supplemental] claims.  However the dismissal should expressly be *without* prejudice so that the plaintiff may refile in the appropriate state court." *Bass v. Parkwood Hospital*, 180 F.3d 234, 246 (5th Cir. 1999).

The Court recognizes that 28 U.S.C. § 1367 authorizes district courts to decline supplemental jurisdiction over related state law claims if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."  Furthermore, this Court should also consider " the common-law factors of judicial economy, convenience, fairness, and comity" in determining whether to exercise supplemental jurisdiction.  *Mendoza v. Murphy*, 532 F.3d 342, 347 (5th Cir. 2008).  Balancing all of these factors, the Court finds that it should not exercise supplemental jurisdiction.

Accordingly, the Court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."); *Severin v. Parish of Jefferson*, 357 Fed. App'x 601, 606 (5th Cir. 2009).

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that District 5's motion is **GRANTED** and Juino's Title VII claims are **DISMISSED WITHOUT PREJUDICE** pursuant to Rule 12(b)(1) due to a lack of subject matter jurisdiction.

**IT IS FURTHER ORDERED** that Juino's remaining state law claims are **DISMISSED WITHOUT PREJUDICE** because the Court declines to exercise supplemental jurisdiction.

**IT IS FURTHER ORDERED** that the parties' joint motion[46] to stay discovery and vacate the scheduling order in the above-captioned case pending the Court's decision regarding the motion for partial summary judgment is **DISMISSED AS MOOT**.

New Orleans, Louisiana, February 13, 2012.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[46] R. Doc. No. 26.